steamship. Early in the morning of May 1st, the ebb tide permitted the barge to rest on the pile as above stated and caused the sinking.

There is no direct evidence as to how long the pile had been in the dangerous condition. It was a part of the fender piling of the pier, and had been broken several feet below the surface of the water. There is some evidence that the break appeared to be a new one, though I am far from convinced of that fact. There is, however, no evidence of any circumstances from which I can infer that the defect had existed for one hour before the barge was moored. The case differs from that relied on by libelant, Kenny v. Balbach Smelting & Refining Co. (D. C.) 6 F.(2d) 671, because in the latter case apparently there was no qeustion but that the pile had been broken long before if it was in fact permanently attached to the bottom. As I read Judge Ward's opinion, the real question was whether the damage had been done by some object adventitiously there or by the remains of a permanent pile. Once he found that the pile was permanently attached, its location was such that no question could arise as to its not having been broken long before.

In the present case I have no doubt but that the pile was permanently attached to the bottom and constituted a part of the regular fender piling which might be broken at any time. Where there is not a scintilla of evidence to show how long it had been broken, I cannot assume that it was long enough to have given constructive notice.

 The burden was on libelant to prove negligence on the part of the respondents in failing to repair the defect. In the absence of notice of the defect, either actual or constructive, there was no negligence in failing to repair it. The defect itself was not of such a character as to presuppose its prior duration. Indeed for all that appears the pile may have been broken by libelant's own barge.

Libelant urges that the communications between the city of New York and the steamship company disclose that both of them had actual knowledge of the need of repairs on the pier. This is entirely true, and apparently the pier was generally in poor condition. The agreement between the parties required the steamship company to expend $2,000 a month in repairs which were to be subject to the supervision of the city. There is, however, no indication that the parties had in mind any repairs to the pile which did the damage or to anything in its neighborhood. For all that appears, the condition of the pier which the parties had in mind may have been entirely confined to the superstructure or to its planking. This general defective condition and the respondents' knowledge of it would be circumstances bearing upon a question of respondents' negligence in failing to discover a defect which had been in existence for a certain length of time; but in the present case it would be a pure surmise to predicate any existence of the defect prior to the mooring of the barge.

If the above conclusions are correct, it would be useless to consider the mutual relations between the two respondents and their respective responsibilities to the third parties. I accordingly direct a decree for the respondents.

## THE HALO.

District Court, S. D. New York.
April 24, 1930.

Suit by insurance companies to recover for loss of a barge caused by the negligence of respondent. The suit was originally commenced by the Globe & Rutgers Fire Insurance Company on the ground that it had paid a policy of marine insurance covering the loss and was therefore subrogated to the rights of the owner of the barge. After an interlocutory decree in favor of the libelant, the North British & Mercantile Insurance Company was permitted by the court to intervene on the ground that it also had paid a policy of marine insurance covering the loss, and a new trial was had upon the issues raised between the intervening petitioner and the respondent.

Bigham, Englar, Jones & Houston, of New York City (W. J. Nunnally, Jr., of New York City, of counsel), for intervening petitioner.

Purrington & McConnell, of New York City, for libelant.

Frueauff, Robinson & Sloan, of New York City (E. Underwood, Jr., and George J. Johnstone, both of New York City, of counsel), for respondent Cities Service Co.

FRANK J. COLEMAN, District Judge (after stating the facts as above).

■ The principal question presented upon the present trial is whether the policy of marine insurance issued by the intervener to the owner of the barge and subsequently paid by it covered any loss for which respondent would be liable to the barge owner. Since it has already been adjudicated that respondent's negligence caused the loss of the barge, respondent was liable to the owner for the value of the barge itself, and consequently would be liable to any insurance company subrogated to the rights of the owner through payment of a policy on the hull. The intervener's policy, however, was not on the hull, but upon "towage and trip expenses." Respondent would not have been liable to the owner of the barge for those expenses, and consequently is not liable to the intervener which paid the policy of insurance covering their loss.

■ The intervener contends that, though the policy was in form upon "towage and trip expenses," it was actually upon the hull of the barge, and this contention will require a close examination of the policy. A printed form of policy was used in which the subject-matter of the insurance was originally described as "body, tackle, apparel, stores, ordinance, munitions, artillery, boats and other furniture, boilers and machinery." These words were crossed out and in their place was typewritten "towage and trip expenses." The valuation provision originally had two items, the first of which was "hull, tackle, apparel, furniture, etc.," and the second, "boilers, machinery, etc." Both of these were crossed out and in place of them was typewritten "towage and trip expenses," for which a valuation was placed at the amount of the policy, $7,500. These alterations clearly indicated that the intervener was not insuring the hull, but merely the towage and expenses of the trip upon which the barge was warranted to be, namely, from Key West, Fla., to Philadelphia.

In the subsequent printed clause defining the perils insured against, there was some mention of hull and machinery, but these did not have the effect of changing the subject-matter of the insurance. The clause particularly relied on by the intervener originally read as follows: "This insurance also specially to cover (subject to the free of average warranty) loss of, or damage to hull or machinery, through the negligence of Master, Charterers, Mariners, Engineers, or Pilots, or through explosions, bursting of boilers, breakage of shafts, or through any latent defect in the machinery or hull, provided such loss or damage has not resulted from want of due diligence by the Owners of the Ship, or any of them, or by the Manager, Masters, Mates, Engineers, Pilots, or Crew not to be considered as part owners within the meaning of this clause should they hold shares in the steamer." This was modified to some extent by a printed rider which related to a large number of the clauses of the policy. In view of the history of this clause (Arnold on Marine Insurance (11th Ed.) vol. 2, p. 1113) it is plain that it cannot be considered as changing the subject-matter of the insurance as defined by the typewritten alterations above mentioned.

Since the amount paid by the intervener to the barge owner was the stipulated value of the towage and trip expenses which were not recoverable by the barge owner from this respondent, the intervener has been subrogated to no cause of action against the respondent, and I therefore direct a decree accordingly.